## NELSON v. HAMRA et al.

No. 15348. Opinion Filed July 26, 1927.

Rehearing Denied Oct. 11, 1927.

(Syllabus.)

1. **Appeal and Error—Questions of Fact —Conclusiveness of Findings as to Abandonment of Contract.**

Whether a contract is abandoned is a question of fact, to be determined by the court or jury from the facts and circumstances of the particular case. Where the testimony is oral and conflicting, and the finding of the court is general, such finding is a finding of every special thing necessary to be found to sustain the general finding, and is conclusive upon this court upon all doubtful and disputed questions of fact.

2. **Contracts—Time for Performance Where not Specified.**

If no time is specified for the performance of an act required to be performed, a reasonable time is allowed. If the act is in its nature capable of being done instantly, it must be performed immediately upon the thing to be done being exactly ascertained.

3. **Same—Time as Essence of Contract Where Value of Subject-Matter Fluctuates.**

Where no time for performance is specified, and when the nature of the subject-matter is such that its value necessarily changes —that is, either increases or decreases with the mere lapse of time—time is then of the essence of the contract and performance must be completed at the earliest practicable period.

4. **Same—Vendor and Purchaser—Contract to Purchase Interest in Oil Lease—Duty to Act Promptly in Passing on Title.**

Since the contract of purchase did not provide a time within which the abstract should be examined, it was the duty of the plaintiff to cause it to be examined promptly and to either accept or reject the title promptly.

5. **Same—Judgment Denying Specific Performance to Purchaser Sustained.**

Record examined, and held sufficient to support the judgment of the trial court.

Error from District Court, Creek County; James Hepburn, Judge.

Action by Otto T. Nelson against H. J. Hamra et al. Judgment for defendants, and plaintiff brings error. Affirmed.

Boone & Mason, Rittenhouse & Rittenhouse, and Allen Underwood, for plaintiff in error.

George S. Ramsey, D. A. McDougal, and W. V. Pryor, for defendants in error.

HEFNER, J. This is a suit brought by the plaintiff in error, as plaintiff, against the defendants in error, as defendants, seeking the specific performance of a contract for an assignment of an undivided three-fourths interest in an oil and gas lease on certain land in Creek county, Okla.

Thomas Hendrickson was the allottee of the land, and prior to his majority an oil and gas lease was executed in favor of the Cosden Oil & Gas Company by the guardian. That lease was about to expire by reason of the fact that the minor was then approaching majority. The Cosden Company sought to obtain an extension of the lease. and the guardian agreed to execute an extension. and the extension agreement was entered into only a few days before his majority, and at a private sale. Soon after the minor became of age he conveyed the land to his mother, Elizabeth Fugate. The Cosden extention agreement was attacked and the case was brought to this court and

finally determined against the Cosden Company. (See 96 Okla. 206, 221 Pac. 86.)

While the litigation was pending against the Cosden Company, Hendrickson and his mother, Elizabeth Fugate, entered into a second lease on this property with the defendant H. J. Hamra. The lease, in addition to the usual terms, provided that a well should be commenced on or before March 2, 1922. On February 28, 1922, an extension of the oil and gas lease was given by Hendrickson and his mother. It was the purpose of the extension agreement to extend all the terms of the lease until the Cosden litigation was finally determined.

On July 6, 1922, the defendant Hamra entered into a written contract with the plaintiff Nelson whereby the defendant agreed to assign an undivided three-fourths interest in the lease to the plaintiff and to furnish an abstract to the plaintiff for his examination. The contract further provides:

"Second party herein agrees with the first party herein that upon the approval of title to said lease, and within 30 days thereafter, he will begin putting upon said lease the necessary lumber and timber for the construction of a derrick to be used for drilling purposes, and within 45 days from the date of the assignment, to begin drilling operations upon said lease, and to continue drilling operations without unreasonable delay until the Wilcox sand is reached unless oil or gas is found in paying quantities at a lesser depth.

"The party of the second part, for and in consideration of the three-fourths interest to be assigned by first party to second party, hereby agrees to bear the expense of the labor and material in the drilling of the first two wells on said leased premises in tank. * * *

"The first party further agrees that he will, upon the approval of title by said party, immediately place an assignment of a three-fourths interest in the lease heretofore described to second party, in the First National Bank at Sapulpa, Oklahoma, to be delivered by said bank to second party when drilling operations upon said lease are commenced."

At the time this contract was entered into the defendant Hamra told the plaintiff Nelson about the Cosden litigation. The defendant Hamra claimed that the principal consideration for the execution of said agreement was to procure immediate drilling on said premises; that there were extensive developments going on around said lease, and that the contract was entered into in view of the Cosden litigation and for the purpose that drilling might be commenced on the lease notwithstanding this litigation and the drilling might be carried on during the pendency of the Cosden suit.

The abstract of title was delivered to the plaintiff Nelson for his examination on the 9th day of July, 1922, three days after the date of the contract. The plaintiff contends that he had a right to delay the acceptance of the title to the lease until the Cosden litigation was settled. At the time the contract was entered into, the Nowata Oil & Gas Company had erected a derrick on the land adjacent to that covered by the lease. This well was drilled, and on the 7th day of April, 1923, oil was discovered therein and the well made approximately 1,800 barrels per day. The Nowata well came in a week or ten days subsequent to the decree by the Supreme Court in the Cosden litigation. At this time, about nine months after the contract was entered into, the plaintiff had not approved the title to the lease in controversy. After the Nowata well came in, the plaintiff intervened in the Supreme Court and asked that a receiver be appointed to protect the property covered by his agreement with the defendant Hamra, but no relief was granted the plaintiff by this court. This action for specific performance was filed on July 7, 1923, a year and one day after the date of the contract and three days after the final determination of the Cosden litigation.

On the 13th day of April, 1923, the defendant Hamra entered into a contract with the defendants W. A. Wise and L. B. Jackson for the development of said lease, and Wise and Jackson immediately entered upon the premises and began operations and spent approximately $50,000 in drilling a well.

On the 10th day of November, 1923, the case was tried before the district judge, and the trial court found all the issues in favor of the defendants and rendered judgment in their favor and against the plaintiff.

Among other defenses, the defendants plead that the plaintiff abandoned the contract. Evidence was introduced on this issue.

In the case of Martin v. Spaulding et ux., 40 Okla. 191, 137 Pac. 882, Mr. Justice Kane, speaking for this court, said:

"Whether a contract is abandoned is a question of fact, to be determined by the court or jury from the facts and circumstances of the particular case.

"Where the testimony is oral and con-

flicting, and the finding of the court is general, such finding is a finding of every special thing necessary to be found to sustain the general finding, and is conclusive upon this court upon all doubtful and disputed questions of fact."

Again, this court in the case of Saxon v. White, 21 Okla. 194, 95 Pac. 783, speaking through Mr Justice Hayes, said:

"Where a jury is waived and the cause submitted to the court, and where complete separate defenses are set up by defendant, a general finding of the trial court in favor of the defendant will not be disturbed by this court, if the evidence fairly tends to support either of the defenses.

"It is not error to refuse a decree of specific performance upon a contract that has been abandoned by both parties."

We have read the record on the question of abandonment, and two witnesses testified positively to a conversation with the plaintiff wherein he agreed that if he did not begin operations within 15 days from the date of the conversation, he would surrender all rights under said contract. One of the witnesses testified that he talked to the plaintiff after the 15 days' extension had expired and that he stated that he claimed no further interest under said contract. This evidence amply sustains the judgment of the trial court, and under the cases above cited, the judgment should be affirmed on the theory of abandonment.

It is next contended by the defendants that no time being specified in the contract within which the plaintiff was to pass on the abstract and to approve or disapprove the title, the law implies a reasonable time. This is a correct statement of the rule and is supported by the adjudicated cases as well as by section 5060, C. O. S. 1921, which is as follows:

"If no time is specified for the performance of an act required to be perfected, a reasonable time is allowed. If the act is in its nature capable of being done instantly, as for example, if it consists in the payment of money only, it must be performed immediately upon the thing to be done being exactly ascertained."

The abstract was delivered to the plaintiff on the 9th day of July, 1922. It would only require a few days for an examination of the same. The evidence tended to show that the plaintiff agreed to have the same examined within four days from the date of its delivery. Regardless of this evidence or agreement, a reasonable time in which to examine the same could not be a longer period than one or two weeks. The plaintiff knew at the time the contract was entered into about the Cosden litigation, and the defendants contend and cite many authorities to the effect that, knowing of this defect, it was the duty of the plaintiff to take the title subject thereto. There are many respectable authorities in support of this theory, but it is not necessary for us to pass on that question.

Pomeroy on Specific Performance, section 384, says:

"When the nature of the subject-matter is such that its value necessarily changes—that is, either increases or decreases with the mere lapse of time—time is then of the essence of the contract, and performance must be completed at the specified period."

The plaintiff testified that Mr. Hamra was anxious to get the abstract passed on; that he wanted to get it passed on as soon as possible. The plaintiff submitted the abstract to his attorneys immediately after it was delivered to him, but stated they did not approve. or disapprove it and told him to hold on to it until the end of the Cosden lawsuit. Hamra had no control whatever over the Cosden litigation. It might have been drawn out for several years, and, in fact, was not finally determined for a period of one year from the date of the contract.

Since the contract did not provide a time within which the title was to be accepted or rejected. a reasonable time is implied, and it was the duty of the plaintiff to either accept or reject the title within a reasonable time. In the case of Twin-Lick Oil Co. v. Marbury, 91 U. S. 587-594, 23 L. Ed. 328, Mr. Justice Miller, speaking for the Supreme Court of the United States, said:

"The fluctuating character and value of this class of property is remarkably illustrated in the history of the production of mineral oil from wells. Property worth thousands to-day is worth nothing to-morrow; and that which would to-day sell for $1.000, as its fair value, may, by the natural changes of a week or the energy and courage of a desperate enterprise, in the same time be made to yield that much every day. The injustice, therefore, is obvious of permitting one holding the right to assert an ownership in such property to voluntarily await the event, and then decide, when the danger which is over has been at the risk of another, to come in and share the profit.

"While a much longer time might be allowed to assert this right in regard to real estate whose value is fixed, on which no outlay is made for improvement, and but little change in value, the class of property

here considered, subject to the most rapid, frequent, and violent fluctuations in value of anything known as property, requires prompt action in all who hold an option whether they share its risks or stand clear of them."

Under this and many other authorities announcing the same doctrine, it was the duty of the plaintiff to cause the abstract to be examined promptly and to either accept or. reject the title promptly. The plaintiff agreed to begin operations for the drilling of an oil well on said property within 30 days after the title had been approved. Not having accepted the title within a reasonable time, specific performance will not be granted, and the judgment of the trial court is in all things affirmed.

BRANSON, C. J , MASON, V. C. J., and HARRISON, LESTER. HUNT, CLARK, and RILEY, JJ., concur.

Note.—See under (1) 4 C. J. p. 883, §2855; 13 C. J. p. 790, §1013; 40 C. J. pp. 1098, 1099, §723; p.1118 §750; 36 Cyc. p.720; 38 Cyc. pp. 1976, 1977; 2 R. C. L. p. 193; 1 R. C. L. Supp. p. 433; 4 R. C. L. Supp. p. 90; 5 R. C L Supp. p. 79; 6 R. C. L. Supp. p. 73. (2) 13 C. J. p. 683, §776; p.685, §779; 40 C. J. p. 1118, §750; anno. L. R. A. 1916E, 944; 6 R. C. L. p. 896; 2 R. C. L. Supp. p. 238; 4 R. C. L. Supp. p. 450; 5 R. C. L. Supp. p. 376; 6 R. C. L. Supp. 418. (3) 13 C. J. p. 688, §783; 40 C. J. pp. 953, 954. §533; p.1041, §651; p.1118, §750: 36 Cyc. p. 710; 6 R. C. L. p. 898; 2 R. C. L. Supp. p. 238; 4 R. C. L. Supp. p. 450; 5 R C. L. Supp. p. 376; 6 R. C. L. Supp. p. 418. (4) 40 C. J. p. 1119. §751; 36 Cyc. p. 710. (5) 36 Cyc. p. 784 (Anno).