**HOODENPYL v. GUINN et al.**

No. 23305. Oct. 16, 1934.

Rehearing Denied Dec. 18, 1934.

E. J. Gilder and P. A. M. Hoodenpyl, for plaintiff in error.

Cook & Bingman, for defendants in error.

PER CURIAM. Defendants in error, who will hereafter be called plaintiffs, filed suit in the lower court to quiet their title to the following described real estate located in McClain county, Okla., to wit: All that portion of the Canadian river bed land which lies below the highwater mark to the thread or center of the stream, and between the adjacent uplands of the parties of the first part in section ten (10), township five (5) north, range two (2) east, and the center or thread of said river at low water mark, and between the northwest quarter of section ten (10) and the northwest quarter of section eleven (11) of township five (5) north, range two (2) east, against any claims of plaintiff in error, who will hereafter be called defendant.

Plaintiffs alleged in their petition that defendant claimed to be the owner of one-half of the oil, gas, and other minerals in said lands by virtue of a certain contract entered into between plaintiffs and defendant, wherein it was agreed that plaintiffs had conveyed to defendant one-half interest in the oil and gas rights in said land in consideration of defendant, who is an attorney at law, prosecuting and perfecting plaintiffs' claim of title to said land by a proper court proceeding. Plaintiffs alleged that said contract was void for the following reasons:

(1) That it was procured by fraud and misrepresentation.

(2) That said contract had been surrendered and abandoned as between the parties hereto.

(3) That it was champertous.

(4) That there was no consideration therefor.

Plaintiffs further alleged that defendant had caused a copy of said contract, together with his affidavit claiming an interest in said land, to be placed of record in the office of the county clerk of McClain county, Okla., and that said affidavit with copy of contact attached thereto was a cloud upon plaintiffs' title to said land, and asked to have the same canceled and title quieted in plaintiffs as against any claim of defendant.

The defendant for his answer to said petition admitted that he had filed said affidavit and copy of said contract for record as alleged in plaintiffs' petition. He denied all of the other allegations of said petition. For further answer to plaintiffs' petition, defendant alleged that he was employed by plaintiffs, as evidenced by said written contract, to establish by proper legal proceedings their claim to that part of the Canadian river bed described in plaintiffs' petition, and as a consideration for said services to be performed by him and the payment of all necessary expenses, plaintiffs conveyed to him a one-half interest in the oil, gas, and other minerals in said land. That there was a question as to the ownership of said land as between the riparian owners along said stream by reason of said stream having changed its channel. That one H. M. Elwell, with whom he had all of his dealings in the procurement of said contract, was the agent of plaintiffs, and that after the execution and delivery of said contracts by plaintiffs to defendant, he requested that plaintiffs acknowledge the same so that it might be placed of record, and that he delivered said contract to the said Elwell for the purpose of having said plaintiffs acknowledge it, and that said plaintiffs still had the same in their possession; that plaintiffs procured possession of said contract by fraud, and that to protect his rights he was compelled to file said affidavit for record. That between October 8 and October 25, 1928, defendant had performed certain services pursuant to said contract in preparing to file an action to establish plaintiffs' claim to said land, and that on the 25th day of October, 1928, he was wrongfully discharged from said employment; that he was and is ready, able, and willing to perform said contract, and that by reason thereof he has title to a one-half interest to the oil, gas, and other minerals in and under said land.

A jury was waived and the case was tried before the court, who found the issues of law and fact generally in favor of plaintiffs and against defendant. No special finding of fact was requested or made.

Defendant in his petition in error alleges a number of assignments of error for the reversal of this cause, but in his brief the only error urged upon this court is that the judgment of the trial court is not supported by the evidence and is contrary to law.

Plaintiffs' petition alleged four reasons for the avoidance and cancellation of the contract in question, as heretofore stated. This court has held that:

"Where a jury is waived and the cause submitted to the court, and where complete

separate defenses are set up by defendant, a general finding of the trial court in favor of the defendant will not be disturbed by this court if the evidence fairly tends to support either of the defenses." Saxon v. White, 21 Okla. 194, 95 P. 783.

It follows, therefore, that if any one of the grounds for cancellation of said contract is reasonably supported by the evidence, then this court under the general finding of the trial court should not disturb the judgment. We think the evidence in this case fairly tends to support the finding of the trial court that there was a surrender of said contract and an abandonment thereof.

The plaintiff J. C. Guinn testified that, in October, 1928, at Purcell, Okla., he had a conversation with one H. M. Elwell, in which plaintiff Guinn asked him how he should go about getting a deed to his land in the Canadian river bed: that Elwell told him that he did not know, but that he had a lawyer at home that he went to with all of his business; that he, Elwell, would see him the next day and let plaintiff Guinn know what he said about it. A short time thereafter Elwell returned and advised plaintiff Guinn that his (Elwell's) lawyer said it would cost a lot of money, have to go through court, etc., "but we decided if you will give us a lease on it and one-half the royalty we would get it through the court and be out all expenses and get you a deed to it."

Plaintiff did not agree to give a lease, but did agree to give one-half the royalty. The next day or so Elwell returned with the contract in question, and plaintiffs signed it and delivered it to Elwell. That thereafter Elwell came back to plaintiff Guinn with the contract and another one, stating that the one signed was no good; that he had another one that he wanted the plaintiffs to sign, and he would bring a notary public to acknowledge it. Later in the day the following transaction and conversation took place between the said Elwell and plaintiff Guinn:

"I says, 'Mr. Elwell, you say that old contract ain't no account?' He says, 'It ain't no account.' Well I says, 'Give it to me then.' He pulled it out of his pocket and handed it to me and I stuck it in my pocket."

Elwell stated at the time of returning plaintiff's contract:

"I was just fooled, I feel like kicking myself for not tying you fellows up at the start—I won't have any more to do with it."

The above conversations and transactions were corroborated by other witnesses. The said H. M. Elwell did not testify in the case.

The defendant testified that Elwell was not his agent and that Elwell was not interested in said contract with him, and that after the execution of said contract and the delivery thereof by Elwell to defendant at his office, the said defendant delivered said contract back to Elwell for the purpose of having it acknowledged, and that Elwell had no authority to surrender it to plaintiffs.

We think that the evidence of plaintiffs, together with the surrounding facts and circumstances of Elwell having conducted all negotiations with plaintiffs, having secured their signatures to said contract in the first instance, and having had possession of this written instrument both before and after the execution thereof, was sufficient upon which to base the court's finding that Elwell either had authority to conduct all negotiations relative to said contract, or that he was interested in said contract with defendant so as to bind said defendant in surrendering and abandoning the same, especially in the absence of any notice to plaintiffs of his limited authority in the matter.

The only disputed and doubtful question of fact, material to the decision of this case, was whether or not the third party, who negotiated the terms of said contract with plaintiffs, was either interested with defendant in said contract or was the agent of defendant so as to bind the defendant by his surrender and abandonment of said contract. On this issue the court found in favor of plaintiffs, and under the authorities that finding is conclusive upon this court. In the case of Martin v. Spaulding et ux., 40 Okla. 191, 137 P. 882, Justice Kane, speaking for this court, said:

"Where the testimony is oral and conflicting and the finding of the court is general, such finding is a finding of every special thing necessary to be found to sustain the general finding, and is conclusive upon this court upon all doubtful and disputed questions of fact."

This ruling of law has been re-affirmed by this court in the case of Nelson v. Hamra et al., 127 Okla. 141, 259 P. 838.

The trial court heard the evidence in this case and saw the witnesses who testified, and is in a better position to judge of their credibility and the weight of their testimony than this court, and since there is some evidence fairly tending to establish plaintiffs'

contention that said contract was surrendered and abandoned, we do not feel that the general finding and judgment of the trial court should be disturbed, and the judgment is accordingly affirmed.

The Supreme Court acknowledges the aid of Attorneys L. A. Wetzel, J. G. Austin, and A. C. Wallace in the preparation of this opinion. These attorneys constituted an advisory committee selected by the State Bar, appointed by the Judicial Council, and approved by the Supreme Court. After the analysis of law and facts was prepared by Mr. Wetzel and approved by Mr. Austin and Mr. Wallace, the cause was assigned to a Justice of this court for examination and report to the court. Thereafter, upon consideration, this opinion was adopted.